IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  1:21cr9 |
| | )  **Electronic Filing** |
| | ) |
| JOSEPH LEONARD STRATTON -KIELMEIER | ) |
| | ) |

## OPINION

On February 17, 2021 a grand jury returned a two (2) count indictment charging Joseph Stratton-Kielmeier ("Stratton-Kielmeier" or "defendant") with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) at Count One, and with the transfer of firearms in violation of the National Firearms Act in violation of 26 U.S.C. § 5861(e) and 18 U.S.C. § 2 at Count Two. Following a jury trial, defendant was found not guilty as to Count One and guilty as to Count Two. Presently before the court is defendant's motion for judgment of acquittal pursuant to Rule 29(c)(1) of the Federal Rules of Criminal Procedure, (ECF No. 149), and the government's response in opposition (ECF No. 156). For the reasons set forth below, defendant's motion will be denied.

Pursuant to Rule 29 "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict . . . ." Fed. R. Crim. P. 29(c)(1). Defendant timely filed the pending motion after seeking an extension to permit the trial testimony to be transcribed.

In reviewing a Rule 29 post-verdict motion for judgment of acquittal, a district court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001). "The court is required to 'draw all reasonable inferences in favor of the jury's verdict.'" United States v. Smith, 294 F.3d 473, 476–77 (3d Cir. 2002) (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d

Cir. 1996)). In conducting the review a court does "not weigh evidence or determine the credibility of witnesses in making this determination," but rather "examine[s] the totality of the evidence, both direct and circumstantial." United States v. Pendleton, 636 F.3d 78, 83 (3d Cir. 2011) (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)). When a reviewing court is "faced with a record of historical facts that supports conflicting inferences," it "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. 120, 133 (2010).

To prevail on a charge brough pursuant to 26 U.S.C. § 5861(e), the government must prove beyond a reasonable doubt that defendant: (1) knowingly transferred an NFA firearm, (2) in violation of the National Firearms Act, and (3) knew the features of the firearm that brought it within the scope of the NFA. See ECF No. 147 at 60. In this case, the jury did *not* find Stratton-Kielmeier guilty of *directly transferring* an NFA firearm, but rather, of aiding and abetting another person in the transfer of firearms in violation of the NFA. ECF No. 141.

The federal aiding and abetting statute, 18 U.S.C. § 2, provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense "is punishable as a principal." 18 U.S.C. § 2(a). To prevail on a charge under this provision, the government must prove: "(1) that another committed a substantive offense; and (2) the one charged with aiding and abetting knew of the commission of the substantive offense and acted to facilitate it." United States v. Centeno, 793 F.3d 378, 387 (3d Cir. 2015). In addition, there must be "proof that the defendant had the specific intent to facilitate the crime." United States v. Mercado, 610 F.3d 841, 846 (3d Cir. 2010). "Facilitation" for aiding and abetting purposes means that "the defendant associated himself with the venture and sought by his actions to make it succeed." Id.

In contrast, "[n]either mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a conviction." Id. And "[s]pecific intent requires not simply the general intent to accomplish an act with no particular end in mind, but the additional deliberate and conscious purpose of accomplishing a specific and prohibited result." United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010).

Defendant argues that the evidence presented at trial was insufficient to support his conviction at Count Two because the government never identified the principal who transferred the firearms in violation of the NFA. He further contends that the government failed to establish that he knew of the commission of the offense and that he intended to facilitate it. While the government does not dispute that the identity of the principal was not established at trial, it maintains that it only needed to prove that "the offense was committed by someone, and that the defendant intentionally did an act to help in its commission." ECF No. 156 at 8.

Reviewing the record in the light most favorable to the prosecution, as we must at this juncture, the court finds that there was sufficient evidence to allow a rational trier of fact to find Stratton-Kielmeier guilty of Count Two beyond a reasonable doubt. The evidence presented at trial showed the following.[1]

In January of 2020, a confidential informant, Joseph Seelinger ("Seelinger"), contacted Stratton-Kielmeier to arrange for the purchase of machine guns. Trial Tr., July 30, 2024; ECF No. 151 at 99:4–8. Seelinger placed a recorded phone call to defendant regarding the transaction, during which defendant confirmed that the available firearms were fully automatic. Id. at 104:6–9. Defendant also stated that the individuals selling the guns do not deal with many people besides himself. Id. at 18–20. Ultimately, the two agreed to complete the transaction the next day. Id. at 105:16–20.

---

[1] The court confines its summary of the evidence to the facts that are necessary to its disposition.

3

The following day, Seelinger picked defendant up at his residence and he instructed Seelinger to drive to the Country Fair Market. Id. 111:4–8. On the way there, Seelinger gave defendant $2,000 for the weapons; defendant counted the money and confirmed it was the correct amount. Id. at 130:17–131:3. When Seelinger and defendant arrived at the Country Fair parking lot, they pulled up next to a red vehicle and defendant instructed Seelinger to follow it. Id. at 134:17–135:10. Eventually, they arrived at a barn, at which point defendant got out of the vehicle with Seelinger's money. Id. at 139:19–21. Defendant spoke with two or three unidentified individuals, then they all went into a side room. Id. at 9–11. Seelinger remained in the vehicle during this time. Id. at 140:16–18. He testified that he did know the other individuals inside the barn and that they never introduced themselves to him. Id. at 150:16–22.

Eventually, defendant and the individuals returned from the side room with the firearms in hand. Id. at 141:12–14. Defendant told Seelinger that two of the firearms were semi- and fully automatic, but the third was only semi-automatic. Id. at 143:1–5. The guns were placed in the trunk of Seelinger's car and defendant wrapped them in a blanket. Id. at 9–12. On the drive back from the barn, defendant advised Seelinger of the speed limit—Seelinger testified that he remembers that he was "going fast." Id. at 145:8–14. Defendant then stated, "Federal time for each one." Id. at 16–18. Before Seelinger dropped defendant off at his house, he asked whether defendant was "positive" that the firearms were "legit" and defendant replied, "Yes, fully legit." Id. at 146:20–147:5. Seelinger explained that this question was meant to "mak[e] sure everything he said about the guns [was] truthful." Id. at 146:24–25. When Mike Shaffer, a Special Agent for the FBI, interviewed defendant a few months later, he told Agent Shaffer that he had "put the two parties together" but denied selling the firearms. Trial Tr., July 31, 2024; ECF No. 152 at 74:12–13.

4

Sara Freeman, a National Firearms Act specialist for the Bureau of Alcohol, Tobacco & Firearms, testified that in order for an individual to possess a machine gun lawfully, it must be registered in the National Firearms Registration and Transfer Record ("NFRTR"). Id. at 100:22–23. If a firearm is not lawfully registered as required by the NFA, it cannot be registered and legitimized by its possessors. Id. at 101:7–10. Ms. Freeman outlined the application process to transfer an NFA firearm from its registered owner to an individual transferee. Id. at 101:17–103:16. The transfer application must be approved before the transferee can take possession of the NFA firearm. Id. at 103:17–19.

Ms. Freeman searched the NFRTR for the two fully automatic firearms that Seelinger purchased and both firearms came back as unregistered. Id. at 104:20–25, 105:17–22. She testified that, based on the searches she conducted, no individual could legally possess these weapons. Id. at 109:13–23.

Turning to defendant's arguments, the court finds his contention regarding the necessity of the principal's identity to be misplaced. As the foregoing summary demonstrates, the government never established who sold the guns to Seelinger—he did not recognize any of the individuals in the barn and he never learned their names. However, "[i]t is not a prerequisite to the conviction of the aider and abettor that the principal be tried and convicted *or in fact even be identified*." United States v. Wasserson, 418 F.3d 225, 233 (3d Cir. 2005) (emphasis added) (quoting United States v. Provenzano, 334 F.2d 678, 691 (3d Cir. 1964)). Indeed, in United States v. Ozcelik, the Third Circuit upheld a bribery conviction on a theory of aiding and abetting despite the government not only failing to name a specific principal, but the only evidence it "produced at trial that the unnamed [principal] *existed* was [the defendant's] own statements to that effect." 527 F.3d 88, 96 (3d Cir. 2008) (emphasis added).

5

In this case, not only did defendant tell Agent Shaffer that he had put "two parties" in contact with each other, but Seelinger saw him interact with other individuals during the purchase. To satisfy the first element of aiding and abetting, the government only needed to prove that "another" person transferred the firearms in violation of the NFA. Centeno, 793 F.3d at 387. Defendant's own statement to Agent Shaffer and Seelinger's testimony provides sufficient evidence to allow a rational trier of fact to conclude that the unnamed individuals at the barn sold Seelinger unregistered machineguns—or, in other words, they "transferred" them to Seelinger in violation of the NFA. See 26 U.S.C. § 5845(j) (defining "transfer" under the NFA as "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of.").

Defendant's challenges to the sufficiency of the evidence regarding his knowledge of the crime and his intent to facilitate it likewise fall short. He suggests that the government needed to prove that he knew the firearms were not registered. ECF No. 149 at 4. And he also argues that the evidence presented at trial demonstrated that his involvement was limited to "putting a buyer and seller in contact" and being "merely a witness to the transaction." Id.

First, the Supreme Court has held that a conviction under § 5861 does not require proof of knowledge that a firearm is unregistered. See United States v. Freed, 401 U.S. 601, 609 (1971). The government is only required to prove that a defendant knew of the features of the firearm that brought it within the scope of the NFA. See Staples v. United States, 511 U.S. 600, 619 (1994).

To that end, Seelinger testified that defendant advised him on at least three occasions—before, during, and after the transaction—that some or all of the weapons were fully automatic. This testimony, if credited by the jury, provided sufficient evidence that defendant knew of the features of the firearms that brought them within the scope of the NFA. See 26 U.S.C. § 5845(b) (defining "machinegun" under the NFA as "any weapon which shoots . . . automatically more

6

than one shot, without manual reloading, by a single function of the trigger."). In any event, under § 5861, neither the principals nor defendant needed to know that the weapons were unregistered and the absence of such evidence is not grounds to overturn the jury's verdict.

Finally, defendant's characterization of his involvement and intent to facilitate the offense is inapposite to the court's obligation to draw "all reasonable inferences in favor of the jury's verdict." Smith, 294 F.3d at 476–77. While defendant may believe that other inferences are possible from the evidence offered, we must presume that "the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel, 558 U.S. at 133.

Moreover, the evidence presented at trial showed that defendant was not simply present at the scene of the crime; he contacted the sellers, instructed Seelinger on where to go, counted his money, spoke with the individuals at the barn, placed the weapons in the trunk, and covered them. This is more than enough evidence of defendant's "affirmative participation which, at least, encourage[d]" the sellers "to commit the offense." Mercado, 610 F.3d at 846. And based on defendant's comments to Seelinger on the drive back regarding the speed limit followed by, "Federal time for each one," a reasonable juror could infer that defendant had the "deliberate and conscious purpose of accomplishing a specific and prohibited result." Petersen, 622 F.3d at 208. Stated differently, there was sufficient evidence that defendant "actively participate[d] in a criminal scheme knowing its extent and character." Rosemond v. United States, 572 U.S. 65, 77 (2014). Therefore, it was reasonable for the jury to conclude that he had the specific intent to facilitate the crime.

Based on the foregoing, defendant's motion for judgment of acquittal [149] will be

denied. An appropriate order will follow.

Date: January 27, 2025

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Molly Anglin, AUSA
Michael J. DeRiso, Esquire

(*Via CM/ECF Electronic Mail*)

8